IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COMMERCE INSURANCE SERVICES, INC. | | HON. JEROME B. SIMANDLE |
| Plaintiff, | | Civil No. 05-3536 (JBS) |
| v. | | |
| STANLEY SZCZUREK, FRANEY MUHA ALLIANT INSURANCE SERVICES, INC. and ALLIANT RESOURCES GROUP, INC., | | |
| Defendants. | | |

| | | |
|---|---|---|
| COMMERCE INSURANCE SERVICES, INC. | | |
| Plaintiff, | | Civil No. 05-3565 (JBS) |
| v. | | **OPINION** |
| SUSAN JONES, FRANEY MUHA ALLIANT INSURANCE SERVICES, INC. and ALLIANT RESOURCES GROUP, INC., | | |
| Defendants. | | |

APPEARANCES:

William M. Tambussi, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
     Attorney for Plaintiff

Mary Kay Brown, Esq.
BUCHANAN INGERSOLL, PC
College Centre
500 College Road East
Princeton, NJ 08540
     Attorney for Defendants

**SIMANDLE**, U.S. District Judge:

Plaintiff Commerce Insurance Services, Inc. ("Commerce") filed separate complaints against two former employees, Defendants Stanley Szczurek and Susan Jones, each together with Franey Muha Alliant Insurance Services, Inc. and Alliant Resources Group, Inc. (collectively "Alliant"), alleging in each instance a breach of the non-compete clause contained in Plaintiffs' respective employment agreements with Commerce.  The matters are currently before the Court upon the motions of Szczurek and Alliant (collectively "Szczurek Defendants") and Jones and Alliant (collectively "Jones Defendants"), seeking partial dismissal of the complaints under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] [Docket Items 18.]

For the following reasons, the motion to dismiss by the Szczurek Defendants should be denied in its entirety, and the motion to dismiss by the Jones Defendants should be granted in part.

**I.   BACKGROUND**

For purposes of these motions to dismiss only, the Court will accept as true all well-pleaded facts.  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 (3d Cir. 1994).

---

[1] More specifically, the Jones Defendants seek dismissal of Count II – tortious interference with existing and prospective contracts, and Count III – breach of duty of good faith and fair dealing.  The Szczurek Defendants seek dismissal of Count III – tortious interference with prospective economic advantage; Count IV – breach of duty of good faith and fair dealing; and Count V – fraud in inducement.

A.    <u>Szczurek Action</u>

According to the complaint against Szczurek, Defendant Szczurek was an employee of Commerce, a New Jersey corporation, from approximately September 24, 2001 until April 15, 2005. (Am. Compl. ¶ 7.) On September 24, 2001, Szczurek entered into an Employment Agreement with Plaintiff containing a non-solicitation/competition clause.[2] (Am. Compl. Ex. A ¶ 7.) That agreement states, in pertinent part:

> Employee covenants and agrees that while he is employed by Commerce and for a period of twenty-four (24) months following termination of his employment for any reason, voluntarily or involuntarily, he will not, except with the express prior written consent of the Commerce Board, in any capacity . . ., directly or indirectly, for his own account or the benefit of any Person, establish, engage or participate in or otherwise be connected with any commercial insurance brokerage business which conducts business in any of the States of New Jersey, Pennsylvania or Delaware . . . . Employee further covenants and agrees that while he is employed by Commerce, and for a period of twenty-four (24) months after Employee's employment with Commerce has been terminated for any reason whatsoever, he will not . . . solicit, service, contact, or aid in the solicitation of any person or entity which is or was a Commerce customer or prospective customer within one year prior to the termination of Employee's employment ("Commerce Customers"), for the purpose of (a) selling services or goods in competition with Commerce's business, (b) inducing Commerce Customers to cease doing business in whole or in part with Commerce or (c) inducing Commerce Customers to do business with any person or business entity in competition with Commerce's business.

(Szczurek Agreement, Am. Compl. Ex. A, ¶¶ 7.2, 7.3)

---

[2] A copy of this agreement is attached as an exhibit to the complaint.

Defendant Szczurek resigned from his employment as Vice President at Commerce effective April 15, 2005, (Am. Compl. ¶ 18,) at which time he was reminded by Deborah Watson, Vice President of Human Resources at Commerce, of his obligations under his Employment Agreement.  Szczurek was reminded again of those obligations by letter from Ms. Watson dated April 22, 2005. (Id. ¶ 19.)

According to the complaint, Szczurek had begun searching for employment outside of Commerce prior to tendering his resignation on April 15.  (Id. ¶ 20.)  Subsequent to his resignation, Szczurek became associated with Defendants Franey Muha Alliant Insurance Services, Inc. and Alliant Resources Group, Inc., direct competitors of Commerce.  (Id. ¶ 22.)  With the assistance of Alliant and on Alliant's behalf, Szczurek allegedly contacted and solicited Commerce's customers, including Fabbri Concrete & Masonry.  (Id. ¶¶ 23-24.)

Commerce filed a complaint against Szczurek and Alliant on June 7, 2005 in state court, alleging breach of contract (Count I), tortious interference with existing contracts (Count II), unfair competition/tortious interference with prospective economic advantage (Count III), breach of duty of good faith and fair dealing (Count IV), and fraud in inducement (Count V).

The action was removed to this Court on July 14, 2005, and Defendants subsequently moved for partial dismissal under Rule

4

12(b)(6), Fed. R. Civ. P.[3]  Plaintiff amended its complaint on
November 18, 2005 to add a request for injunctive relief, and the
Szczurek Defendants filed a motion to dismiss Counts III, IV and
V of the Amended Complaint on December 6, 2005.  The Court heard
oral argument by counsel for Plaintiff and Defendants at a
hearing on January 5, 2006.

    B.  <u>Jones Action</u>

    According to the complaint against Jones, Defendant Jones
was an employee of Commerce from approximately September 26, 2001
until April 26, 2005.[4]  (Am. Compl. ¶ 5.)  On September 26, 2001,
Jones entered into an Employment Agreement with Plaintiff
containing a non-solicitation/competition clause.  (Agreement,
Am. Compl. Ex. A, ¶¶ 3-4; Am. Compl. ¶ 7.)  That agreement
provided:

> I covenant and agree that as long as I am employed by
> Commerce, and for a period of twenty-four (24) months
> after my employment with Commerce has been terminated
> for any reason, with or without cause, voluntarily or
> involuntarily, I will not directly or indirectly, on my
> own behalf or for the benefit of any Person, solicit,
> service, contact, or aid in the solicitation or
> servicing of any Person or entity which is or was a
> Commerce client or prospective client at any time
> during my employment or within three (3) years prior to

------

[3] By Order dater September 30, 2005, the Court stayed the
motion to dismiss pending the outcome of a court-ordered
mediation.  This motion should be dismissed as moot in light of
Plaintiff's filing of the Amended Complaint.

[4] Once again, for present purposes only, the Court will
accept as true all well-pleaded facts contained in the amended
complaint.

the termination of my employment ("Commerce clients")
for the purpose of (a) selling services or products in
competition with Commerce's business, (b) inducing
Commerce clients to cancel, transfer or cease doing
business in whole or in part with Commerce or (c)
inducing Commerce clients to do business with any
Person or business entity in competition with
Commerce's business.

(Jones Agreement, Ex. A, ¶ 3.)  Additionally, the agreement

required Jones to "hold all of Commerce's Confidential

Information and Trade Secrets in the strictest confidence . . .

during the term of [his] employment or at any time thereafter,

without . . . express written consent."  (Id. ¶ 2.)

On April 2, 2005, Defendant Jones resigned "without

warning."  (Am. Compl. ¶ 12.)  Currently, Jones works for

Defendant Alliant, a competitor of Commerce.  According to the

Complaint, Defendant Jones is soliciting Commerce customers on

behalf of Alliant.  (Id. ¶¶ 12-13.)  Plaintiff filed this action

in state court alleging breach of contract (Count I), tortious

interference with existing and prospective contracts (Count II),

and breach of duty of good faith and fair dealing (Count III).

The action was removed to this Court on July 14, 2005, and

Defendants subsequently moved for dismissal of Counts II and III

under Rule 12(b)(6), Fed. R. Civ. P.[5] Plaintiff amended its

complaint on November 18, 2005 to add a request for injunctive

---

[5] By Order dater September 30, 2005, the Court stayed the
motion to dismiss pending the outcome of a court-ordered
mediation.  This motion should be dismissed as moot in light of
Plaintiff's filing of the Amended Complaint.

relief and the Jones Defendants filed a motion to dismiss Counts II and III of the Amended Complaint on December 6, 2005.  The Court heard oral argument by counsel for Plaintiff and Defendants at a hearing on January 5, 2006.

## II.  MOTION TO DISMISS STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff can prove any set of facts in support of its claims that would entitle it to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, the plaintiff's allegations state a legal claim.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).[6] In other words, a 12(b)(6) motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

---

[6] Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

**III. DISCUSSION**

    A.   <u>Szczurek Defendants' Motion to Dismiss Counts III, IV and V</u>

The Szczurek Defendants filed their motion under Rule 12(b)(6), Fed. R. Civ. P., seeking dismissal of Count III – interference with prospective economic advantage; Count IV – breach of duty of good faith and fair dealing; and Count V – fraud in inducement.  For the reasons now explained, those counts will not be dismissed.

    1.   <u>Count III – interference with prospective economic advantage</u>

In Count III of the Amended Complaint, Plaintiff claims that the Szczurek Defendants contacted and solicited Commerce's clients, including Fabbri Concrete & Masonry, thereby tortiously interfering with prospective economic advantage.[7] (Am. Compl. ¶¶ 38-39.)  The Amended Complaint further alleges that Defendants knew of these economic relationships but, nonetheless, intentionally, willfully, and wantonly caused Plaintiff economic harm by interfering with Commerce's existing and potential clients.

---

[7] Actually, paragraph thirty-eight states:  "Defendants aforesaid conduct in using their influence to contact and solicit Commerce's clients constitutes tortious interference with prospective economic advantage."  Paragraph thirty-nine states: "Plaintiff Commerce reasonably expected to continue to engage in and/or develop business relationships with its clients, including Fabbri Concrete & Masonry, as well as other clients."  Read together, those paragraphs may be fairly understood as alleging that the Szczurek Defendants contacted and solicited clients, including, Fabbri Concrete & Masonry.

The Szczurek Defendants argue that Count III fails to state a claim upon which relief can be granted for two primary reasons. First, they argue that Count III must be dismissed because the Amended Complaint fails to identify a sufficiently concrete prospective contractual relation.  (Szczurek Defs. Br. at 7.) For the reasons now explained, that argument is not correct.

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must demonstrate (1) some reasonable expectation of economic advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) a reasonable probability that the plaintiff would have obtained the anticipated economic benefit in the absence of interference, and (5) that the interference caused the plaintiff damage.  Fineman v. Armstrong Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992) (citing Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751-52 (1989)); Syncsort, Inc. v. Innovative Routines Int'l, Inc., 2005 U.S. Dist. LEXIS 15432, at *30 (D.N.J. May 6, 2005) (quoting Weil v. express Container Corp., 360 N.J. Super. 599, 613-14 (App. Div. 2003) (citing Printing Mart-Morristown, 116 N.J. 739, 751-52 (1989))).

"Prospective economic relation" is broadly defined under New Jersey law:

> The expression, prospective contractual relation, is not used . . . in a strict, technical sense.  It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract.  It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.
>
> Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts.

Fineman, 980 F.2d at 195 (citing Printing Mart-Morristown, 116 N.J. at 755 (quoting the Restatement (Second) of Torts § 766B, comment c)).

Defendants cite Lucas Indus., Inc. v. Kendiesel, Inc., 1995 U.S. Dist. LEXIS 7979, at *25-26 (D.N.J. June 9, 1995), for the proposition that the Third Circuit additionally requires a showing of "a sufficiently concrete prospective contractual relation" for claims of tortious interference with prospective economic advantage.  (Quoting Fineman, 980 F.2d at 195).  To the extent that Lucas relies on the Third Circuit's decision in Fineman for that proposition, Lucas is wrong – the portion of the Fineman decision quoted by the district court in Lucas was addressing the plaintiff's claim for tortious interference with a prospective contractual relation and not, as here, a claim for tortious interference with prospective economic advantage.  See

10

<u>Fineman</u>, 980 F.2d at 195 ("[W]e conclude as a matter of law that Fineman has failed to prove an additional element of tortious interference with a prospective contractual relation, namely, a sufficiently concrete prospective contractual relation.")

In any event, at least one district court in this Circuit has rejected the level of pleading specificity required by <u>Lucas</u> for tortious interference with prospective economic advantage claims.  <u>Syncsort, Inc.</u>, 2005 U.S. Dist. LEXIS 15432, at *33-34.  In <u>Syncsort, Inc.</u>, the defendant/cross-claimant alleged that the plaintiff had induced certain of the defendant's customers to reveal confidential pricing information which could be later used by the plaintiff to its advantage.  Moreover, the defendant there alleged that the plaintiff interfered with a tentative agreement with one its customers.  The district court held that, taken together, these allegations adequately formed the basis of a tortious interference with prospective economic advantage claim which were sufficient to withstand the 12(b)(6) dismissal motion.  <u>Id.</u> at *33-34.

Here, according to the Amended Complaint, Fabbri Concrete & Masonry was a customer of Commerce with which Defendant Szczurek had contact on behalf of, and while employed by, Commerce.  The complaint further alleges that Szczurek subsequently contacted and solicited the business of Fabbri Concrete & Masonry, as well as other clients, on behalf of Defendant Alliant.  (Am. Compl. ¶¶

11

24-25.  Taken together, and implying that the Amended Complaint
alleges such interference was wrongful and intentional as
required for this tort, _supra_, the Court holds that these
allegations adequately form the basis of a claim for tortious
interference with prospective economic advantage.

Second, the Szczurek Defendants argue that Count III must be
dismissed because "the customer[] that form[s] the basis for the
[claim in Count II]" is the same as the one "that form[s] the
basis for the prospective [claim in Count III]."  (Szczurek Defs.
Br. at 7.)  In support of that proposition, Defendants cite _Rodin
Properties-Shore Mall, N.V. v. Cushman & Wakefield of
Pennsylvania, Inc._, 49 F. Supp. 2d 728, 737 (D.N.J. 1999).  In
that case, the district court dismissed a claim for tortious
interference with prospective economic advantage because the
prospective economic relationship forming the basis of that claim
was contractual in nature and the complaint included a claim for
interference with existing contracts.  (Citing _Gov't Guar. Fund
of Republic of Finland v. Hyatt Corp._, 955 F. Supp. 441, 455-56
(D.V.I. 1997) (dismissing a party's claim for tortious
interference with prospective economic advantage where that claim
was duplicative of the party's claim for tortious interference
with contract)).

As Plaintiff points out, however, claims for tortious
interference with existing contracts and tortious interference

12

with prospective economic advantage do not necessarily overlap completely.  Indeed, in Central Paper Distribution Services v. Int'l Records Storage and Retrieval Service, Inc., 325 N.J. Super. 225, 234 (App. Div. 1999), the court held that "the cause of action for interference with prospective economic advantage may have separate qualities [from the interference with contractual relations claim] if there are proofs that defendants acted in ways which would not constitute a breach of contract and served unreasonably to deprive plaintiffs of economic benefits they had a right to expect."  Accordingly, and because the record before the appellate court was not sufficiently developed, the court in Central Paper Distribution Services declined to enter summary judgment and remanded the matter to the trial court.

In this case, although the only customer identified in Counts II and III is Fabbri Concrete & Masonry, the complaint does not allege that the business relationship with Commerce was solely contractual in nature.  Indeed, whereas Count II explicitly references contracts between Fabbri Concrete & Masonry and Commerce, Count III refers only to Commerce's "business relationship" with Fabbri, making no mention of existing or prospective contracts.

For the foregoing reasons, the Court will deny Defendants' motion to dismiss as to Count III.

2.    <u>Count IV – breach of duty of good faith and fair
dealing</u>

Count IV of the Amended Complaint alleges that the Szczurek
Defendants breached the covenant of good faith and fair dealing
incorporated by implication into the Employment Agreement.  (Am.
Compl. ¶ 44.)  The Szczurek Defendants argue that Count IV fails
to state a claim solely because the Complaint contains a breach
of contract claim in Count I and "[t]he implied covenant of good
faith and fair dealing cannot be used to override the express
provisions of a contract."  (Szczurek Defs. Br. at 8 (citing <u>Sons
of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, (1997)).)
Defendants' position is flawed.

In New Jersey, "[i]mplied covenants are as effective
components of an agreement as those covenants that are express.
Although the implied covenant of good faith and fair dealing
cannot override an express term in a contract, a party's
performance under a contract may breach that implied covenant
even though that performance does not violate a pertinent express
term."  <u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236, 244 (2001)
(citing <u>Sons of Thunder, Inc.</u>, 148 N.J. at 419) (internal
citations omitted).  Here, as Plaintiff argues, the facts alleged
in the Amended Complaint could support either (or both) the claim
for breach of contract or that for breach of the implied covenant
of good faith and fair dealing.  Accordingly, the Court will not
dismiss Count IV.

3.    Count V – fraud in inducement

In Count V, Plaintiff claims that in or about September 2001, Defendant Szczurek fraudulently misrepresented to Plaintiff that "he had a book of business worth approximately $1.2 million that he would bring with him to plaintiff."[8] (Am. Compl. ¶ 47.) According to the Complaint, these representations were false and Szczurek brought in less than $400,000 in revenue.  (Id. ¶ 48.) Plaintiff alleges that these misstatements caused Commerce to hire Plaintiff as a Vice-President and pay him a substantial compensation, including a guaranteed signing bonus of $150,000. (Szczurek Agreement, Am. Compl. Ex. A.)

---

[8] Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The purpose of the rule is to "place the defendant[] on notice of the precise misconduct with which [it] is charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985).  "In applying [Rule 9(b)], focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" Christidis v. First Penn. Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1298, at 407 (1969)).  The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading.  See 5A Wright and Miller, § 1298, at 648 (1990).  Defendants here do not argue that the allegations contained in Count V fall short of the heightened pleading requirements of Rule 9(b).  The Court agrees that Count V satisfies Rule 9(b).

Pursuant to Szczurek's employment agreement with Commerce, Szczurek was paid a base salary of $175,000 subject to reduction and/or increase according to Szczurek's ability to obtain within 60 days "broker of record letters" in Commerce's name for twenty-four named insureds which have, in the aggregate, "estimated annualized net revenue" of at least $1 million.[9] In short, the employment agreement provided that Szczurek's compensation would be calculated by multiplying the "estimated annualized net revenue" of the twenty-four companies, divided by $1 million, by his base salary of $175,000:

$175,000      x      $\dfrac{\text{Estimated annualized net revenue from the broker of record letters received by Commerce during the Initial Period with respect to the insureds listed on Exhibit A hereto[10]}}{\$1 \text{ million}}$

(Szczurek Agreement, Am. Compl. Ex. A, ¶ 3.1.)

The Szczurek Defendants seek dismissal of Count V primarily on the ground that the terms of the employment agreement include

_____

[9] The employment agreement further provides that in no event shall the annual base salary be reduced to less than $125,000. (Szczurek Agreement, Am. Compl. Ex. A, ¶ 3.1.)

[10] A list of the twenty-four insureds is attached as an exhibit to the employment agreement.  According to Plaintiff, this list represents the "book of business" worth approximately $1.2 million that Szczurek would bring with him to plaintiff. (Pl. Opp. Br. at 10.)

16

a bargained-for remedy for the alleged misrepresentation. (Szczurek Defs. Br. at 9.)  In other words, the Szczurek Defendants argue that the fraud claim must fail because the damages for the fraud claim would replicate the remedies provided for in the employment agreement.  (Id. at 10.)  Plaintiff, on the other hand, argues that the employment agreement does not provide Commerce with a remedy in the event of fraudulent misstatements, such as those alleged in the Amended Complaint.  (Pl. Opp. Br. at 10.)  Rather, according to Plaintiff, the agreement simply provides for a reduction in salary in the event Szczurek was not able to secure a particular customer base.  The Court agrees with Plaintiff.

To sustain a fraud claim under New Jersey law, a plaintiff must establish that (1) the defendant made a material representation (2) of a presently existing or past fact (3) which was false (4) and was known to be false by the defendant at the time it was made (5) and was made by the defendant for the purpose of inducing the plaintiff to rely on the misrepresentation (6) and the plaintiff actually and reasonably relied upon the misrepresentation (7) and the plaintiff suffered injury as a result.  Travelodge Hotels, Inc. v. Honeysuckled Enterprises, Inc., 2005 U.S. Dist. LEXIS, at *22 (D.N.J. Nov. 10, 2005) (quoting Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981)).

New Jersey courts have distinguished between the fraudulent performance of contracts and fraudulent inducement, finding only that the former are barred by the existence of contractual remedies.  See Unifoil Corp. v. Chequq Printers & Encoders, Ltd., 622 F. Supp. 268, 271 (D.N.J. 1985).  In other words, where the fraud alleged by the plaintiff is extraneous to the contract, a plaintiff may maintain a claim for fraudulent inducement to enter into a contract, but not for fraudulent performance of that contract.  Id.; see Florian Greenhouse, Inc. v. Cardinal IG Corp., 11 F. Supp. 2d 521 (D.N.J. 1998) (permitting fraud claim in breach of contract case); Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1020 (D.N.J. 1995) (same); First Valley Leasing, Inc. v. Goushy, 795 F. Supp. 693 (D.N.J. 1992) (same); Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171 (App. Div. 1994) (same); D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683 (App. Div. 1993) (same).  But see Werner & Pfleider Corp. v. Gary Chemical Corp., 697 F. Supp. 808 (D.N.J. 1988) (dismissing a commercial party's claims for common law fraud where the buyer alleged the seller sold a machine without disclosing that it did not meet the guaranteed production rate contained in the sales contract because the dispute was "essentially contractual in nature").

Here, Plaintiff's fraud claim more closely resembles one for fraudulent inducement than for fraudulent performance.  Indeed, Szczurek's failure to secure the twenty-four broker of record

18

letters by itself was not a breach of the contract terms, nor does it constitute the alleged fraud.  Instead, that failure would have acted only to affect Szczurek's compensation.  The alleged fraudulent inducement arises from misrepresenting that Defendant had a book of business of $1.2 million that he would bring to his new position, as an inducement to obtain a signing bonus and an employment contract from Commerce.  Accordingly, Plaintiff is correct that the alleged fraud is external to the contract and, thus, that a fraud in inducement claim is properly pled.

Finally, the Court disagrees with the Szczurek Defendants that the allegations in Count V can not, as a matter of law, constitute material misrepresentations of fact.  (Szczurek Defs. Br. at 11.)  In Count V, Plaintiff alleges that in September 2001, Szczurek represented to Commerce that "he had a book of business worth approximately $1.2 that he would bring with him to Plaintiff."  (Am. Compl. ¶ 47.)  That singular statement is properly read as containing two separate representations: (1) that Szczurek had a book of business worth approximately $1.2 million in September 2001; and (2) that Szczurek would bring his book of business with him to Commerce.  For Plaintiff to adequately plead fraud in the inducement, only one of those representations would need to be false.  Therefore, even if the Court accepts Defendants' argument that Szczurek's "expression of

an opinion, promise or future event" could not constitute a misstatement of fact, (Szczurek Defs. Br. at 11,) Plaintiff would still be able to prove its fraud claim by demonstrating that Szczurek did not have an approximately $1.2 million book of business at the time the statement was allegedly made.[11] This is a statement of fact, not of opinion or projection, and therefore qualifies as a "presently existing or past fact" under New Jersey law.

The cases cited by Defendants are not to the contrary. Those cases stand largely for the proposition that "[s]tatements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." Alexander v. Cigna Corp., 991 F. Supp. 427, 435 (D.N.J. 1998) (citing Chatlos Systems, Inc. v. National Cash Register Corp., 479 F. Supp. 738, 748-49 (D.N.J. 1979), aff'd in part, rev'd in part, 635 F.2d 1081 (3d Cir. 1980)). See also Diaz v. Johnson Matthey, Inc., 869 F. Supp. 1155, 1165 (D.N.J. 1994) (holding statements that can be

---

[11] Additionally, to the extent that Defendants contend that the alleged misstatement by Szczurek was not material because the contract included a bargained-for reduction in compensation if he did not provide his book of business to Commerce, that argument overlooks both that Szczurek was paid a substantial guaranteed signing bonus and, as counsel for Plaintiff represented at oral argument, that Commerce likely would not have hired Szczurek but for the alleged misstatements.

categorized as "puffery" or "vague and ill-defined opinions" are not assurances of fact and, thus, are not misrepresentations of fact). However, as the Court recognized above, whether Szczurek ultimately brought to Commerce his $1.2 million book of business is not necessary to determining whether Plaintiff's fraud claim is adequately pled. Rather, to the extent that Plaintiff may be able to prove that Szczurek knew that his book of business was not worth $1.2 million in September 2001, the Court holds that the allegation of falsity in the Amended Complaint is sufficient.

For the reasons explained above, the Court will not dismiss Count V.

B.   <u>Jones Defendants' Motion to Dismiss Counts II and III</u>

The Jones Defendants filed their motion under Rule 12(b)(6), Fed. R. Civ. P., seeking dismissal of Count II – tortious interference with existing and prospective contracts, and Count III – breach of duty of good faith and fair dealing. For the reasons now explained, Count II will be dismissed and Count III will remain.

1.   <u>Count II – tortious interference with existing and prospective contracts</u>

In Count II of the Amended Complaint, Plaintiff alleges (1) Defendants know and are aware of the business relationships between Commerce and its customers, (2) Commerce has a reasonable expectation that its business relationships with its customers will continue, and (3) by virtue of past and continuing attempts

by the Jones Defendants to cause the transfer of Commerce's existing and prospective business to Alliant, Defendants have tortiously interfered with existing and prospective contracts. (Am. Compl. ¶¶ 20-24.)  The Jones Defendants contend these allegations are deficient to form the basis of a claim for tortious interference with contracts.  The Court agrees.

It is axiomatic that a claim for interference with existing contracts requires a showing of existing contracts.  Indeed, "the difference between tortious interference with prospective contractual relations and tortious interference with performance of a contract is simply the existence of a contract, as opposed to plaintiff's reasonable expectation of an agreement."  Coast Cities Truck Sales, Inc. v. Navistar Int'l Transportation Co., 912 F. Supp. 747, 772 (D.N.J. 1995) (citing Printing Mart-Morristown, 116 N.J. at 750-51).  The Amended Complaint, however, nowhere identifies any existing contracts.

Likewise, Plaintiff does not identify any prospective contracts.  For claims of tortious interference with prospective contracts, the Third Circuit requires a showing of "a sufficiently concrete prospective contractual relation" in addition to the five factors required for a claim of interference with prospective economic advantage.[12] Lucas Indus., Inc., 1995

_____

[12] Once again, to state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must demonstrate (1) some reasonable expectation of

22

U.S. Dist. LEXIS 7979, at *25-26 (quoting <u>Fineman</u>, 980 F.2d at 195).  Here, the Amended Complaint alleges nothing more than that "Commerce has a reasonable expectation that its business relationships with its customers will continue," (Am. Compl. ¶ 22,) without identifying even a single existing or prospective customer or contract.  Even the liberal pleading standards of Rule 8(a) require more.  <u>See</u> <u>Migdal v. Rowe Price-Fleming Int'l, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) ("The presence of a few conclusory legal terms in the complaint does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." (Internal quotations omitted).).

The Court also agrees with the Jones Defendants that the claim for interference with prospective contractual relations in Count II must be dismissed "to the extent that the unidentified customers that form the basis for [the] contractual claims are identical to the customers that form the basis for the prospective contract claims . . . ."  (Jones Defs. Br. at 7.)  As discussed, <u>supra</u>, courts have dismissed claims for tortious interference with prospective economic advantage where the

---

economic advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) a reasonable probability that the plaintiff would have obtained the anticipated economic benefit in the absence of interference, and (5) that the interference caused the plaintiff damage.  <u>Fineman</u>, 980 F.2d at 186 (citing <u>Printing Mart-Morristown</u>, 116 N.J. at 751-52).

prospective economic relationship forming the basis of that claim is contractual in nature and the complaint includes a claim for interference with existing contracts.  <u>Rodin Properties-Shore Mall, N.V.</u>, 49 F. Supp. 2d at 737 (citing <u>Gov't Guar. Fund of Republic of Finland</u>, 955 F. Supp. at 455-56 (dismissing a party's claim for tortious interference with prospective economic advantage where that claim was duplicitous of the party's claim for tortious interference with contract)).  Here, the Amended Complaint does not distinguish between existing and prospective contracts and, therefore, the claim in Count II for tortious interference with prospective contracts is superfluous.[13]

For the above reasons, the motion to dismiss Count II will be granted in its entirety.

2.   <u>Count III – breach of duty of good faith and fair dealing</u>

Count III of the Jones Amended Complaint is identical to Count IV of the Szczurek Amended Complaint.  Likewise,

---

[13] This holding is not inconsistent with the Court's determination, <u>supra</u>, that Plaintiff's claims in Count III of the Szczurek complaint for interference with existing contracts and prospective economic advantage are not duplicative.  Unlike in that action, Count II of the Jones complaint includes claims for interference with existing and prospective contracts.  Therefore, the decision in <u>Central Paper Distribution Services</u> is distinguishable from the claims against the Jones Defendants here.  325 N.J. Super. at 234 (holding that "the cause of action for interference with prospective economic advantage may have separate qualities [from the interference with existing contractual relations claim] if there are proofs that defendants acted in ways which would not constitute a breach of contract").

Defendants' argument in support of dismissal is the same for both counts.  Therefore, the discussion above applies with equal force here and the Court will deny Defendants' motion to dismiss.

In short, Defendants argue that the claim for breach of duty of good faith and fair dealing fails to state a claim solely because the complaint contains a breach of contract claim in Count I and "[t]he implied covenant of good faith and fair dealing cannot be used to override the express provisions of a contract."  (Jones Defs. Br. at 8 (citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, (1997)).)

In New Jersey, however, "[a]lthough the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term."  Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (citing Sons of Thunder, Inc., 148 N.J. at 419) (internal citations omitted).  Here, as Plaintiff argues, the facts alleged in the Amended Complaint could support either (or both) the claim for breach of contract or that for breach of the implied covenant of good faith and fair dealing.  Accordingly, Count III of the Jones Complaint, like Count IV of the Szczurek Complaint, will not be dismissed.

**IV.   CONCLUSION**

For the foregoing reasons, the motion for partial dismissal of the Amended Complaint by the Szczurek Defendants should be denied in its entirety, and the motion for partial dismissal of the Amended Complaint by the Jones Defendants should be granted only as to Count II.[14]


**January 6, 2006**                              **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 U.S. District Judge

---

[14] Additionally, the motions to dismiss the original complaint [Docket Items 3] will be dismissed as moot.

26